J-S38014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
EDDIE EVANS :
:
Appellant : No. 1763 EDA 2016

Appeal from the PCRA Order March 21, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0014962-2010

BEFORE: GANTMAN, P.J., SHOGAN, J., and FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.: **FILED JULY 18, 2017**

Appellant, Eddie Evans, appeals from the order entered in the
Philadelphia County Court of Common Pleas, dismissing his first petition
brought pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

In its opinion, the PCRA court fully and correctly set forth the relevant
facts of this case. Therefore, we have no reason to restate them.
Procedurally, a jury convicted Appellant of robbery on October 13, 2011.
The court sentenced Appellant on February 2, 2012, to a term of ten (10) to
twenty (20) years' imprisonment. This Court affirmed the judgment of
sentence on April 11, 2013, and our Supreme Court denied allowance of

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

_____

*Former Justice specially assigned to the Superior Court.

appeal on September 25, 2013. *See Commonwealth v. Evans*, 75 A.3d 550 (Pa.Super. 2013), *appeal denied*, 621 Pa. 189, 76 A.3d 535 (2013). Appellant did not seek further review, and his judgment of sentence became final on December 24, 2013.

Appellant timely filed a *pro se* PCRA petition on December 22, 2014. The PCRA court appointed PCRA counsel, who subsequently filed a motion to withdraw and *Turner/Finley*[2] no-merit letter on November 27, 2015. On February 1, 2016, the PCRA court issued notice of its intent to dismiss Appellant's PCRA petition pursuant to Pa.R.Crim.P. 907. Appellant filed a premature notice of appeal on March 2, 2016.[3] The PCRA court denied relief and allowed counsel to withdraw on March 21, 2016. On September 13, 2016, the PCRA court ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b). Appellant timely filed a counseled Rule 1925(b) statement on October 4, 2016. In his Rule 1925(b) statement Appellant, for the first time, claimed: trial counsel was ineffective for failing to file and litigate a motion to suppress the physical evidence of this case; and PCRA counsel was ineffective for failing to raise a claim of trial

---

[2] *Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988) and *Commonwealth v. Finley*, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

[3] Appellant's notice of appeal relates forward to March 21, 2016, the date the PCRA court denied PCRA relief. *See* Pa.R.A.P. 905(a)(5) (stating notice of appeal filed after court's determination but before entry of appealable order shall be treated as filed after such entry and on date of entry). Hence, no appellate jurisdictional defects impede our review.

counsel's ineffectiveness for not filing the motion to suppress. Appellant also claimed trial counsel was ineffective for not filing a motion to suppress the complainant's out of court identification of Appellant.

Appellant presents one issue in his brief:

> WHETHER TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO FILE AND LITIGATE A MOTION TO SUPPRESS THE PHYSICAL EVIDENCE?

(Appellant's Brief at 3).

Appellant concedes the police had reasonable suspicion to stop Appellant and perform a *Terry*[4] frisk to search for weapons. Appellant, however, argues police lacked probable cause to search Appellant after the police confirmed Appellant was unarmed. Appellant asserts the police went beyond the scope of a *Terry* frisk when they removed cell phones from Appellant's pocket. Appellant maintains even if police could have immediately determined that what they felt was a cell phone, the police could not just from the feel decide the cell phone was stolen and thus contraband. Appellant argues the plain feel doctrine does not apply to the facts of this case and, as a result, the police unconstitutionally seized the cell phone from Appellant's person without the requisite probable cause. Appellant also claims he was not in possession of the cell phone found on the ground three feet from him or the gun recovered three to four houses away

---

[4] *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

from Appellant; and he had no connection to those items. Appellant submits trial counsel was ineffective for failing to file and litigate a motion to suppress all of the physical evidence recovered as a result of the stop. Appellant avers trial counsel had no reasonable basis for failing to file and litigate a motion to suppress. Appellant insists he was prejudiced by trial counsel's failure because without the evidence obtained, nothing tied Appellant to the crime. Appellant also asserts the complainant failed to identify Appellant as the assailant at trial, so there is a reasonable possibility that the outcome at trial would have been different as well.

Appellant additionally argues PCRA counsel was ineffective for failing to raise this claim of trial counsel's ineffectiveness regarding the suppression of evidence. Appellant concludes we should reverse the dismissal of his PCRA petition and remand for a new trial. We disagree.

Our standard of review of a grant or denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. **Commonwealth v. Conway**, 14 A.3d 101 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Boyd**, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We exercise *de novo* review over the PCRA court's legal conclusions. **Commonwealth v. Spotz**, 610 Pa. 17,

44, 18 A.3d 244, 259 (2011).

A PCRA petitioner must plead and prove his allegation of error has not been previously litigated or waived. 42 Pa.C.S.A. § 9543(a)(3). "[A]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding." 42 Pa.C.S.A. § 9544(b). A petitioner must preserve any challenge to PCRA counsel's stewardship in a response to counsel's no-merit letter, if counsel moves to withdraw, or during the 20-day response period following the court's Rule 907 notice of intent to dismiss. ***Commonwealth v. Pitts***, 603 Pa. 1, 9 n.4, 981 A.2d 875, 880 n.4 (2009). ***See also Commonwealth v. Ousley***, 21 A.3d 1238, 1245 (Pa.Super. 2011), *appeal denied*, 612 Pa. 698, 30 A.3d 487 (2011) (stating ***Pitts*** prohibits appellate review of any ineffectiveness of counsel claim, if issue is raised for first time in PCRA appeal).

In the instant case, Appellant timely filed a *pro se* PCRA petition on December 22, 2014. The PCRA court appointed counsel, who subsequently filed a motion to withdraw and ***Turner/Finley*** no-merit letter. On February 1, 2016, the PCRA court issued Rule 907 notice. Appellant did not respond to counsel's motion to withdraw and ***Turner/Finley*** no-merit letter or to the court's Rule 907 notice. Instead, Appellant filed a premature notice of appeal on March 2, 2016. The PCRA court denied relief and allowed counsel to withdraw on March 21, 2016. In his Rule 1925(b) statement, Appellant,

for the first time, claimed: trial counsel was ineffective for failing to file and litigate a motion to suppress the physical evidence of this case; and PCRA counsel was ineffective for failing to raise a claim of trial counsel's ineffectiveness for not filing the motion to suppress. Therefore, Appellant's claims are waived. ***See Pitts, supra***; ***Ousley, supra***.

Moreover, even if Appellant had properly preserved his issue for appeal, it would merit no relief, as demonstrated in the PCRA court opinion. (***See*** PCRA Court Opinion, filed October 21, 2016, at 5-20) (finding: police possessed reasonable suspicion to stop and frisk Appellant; radio call reported armed robbery late at night and described assailant as black male wearing burgundy hoodie; robbery occurred in high crime area; police responded to radio call and observed Appellant, who was wearing burgundy hoodie and was only individual in vicinity of robbery; radio call noted assailant removed two cell phones from complainant; while frisking Appellant, police felt cell phone in his waistband and recovered it; police reasonably believed cell phone in Appellant's waistband was contraband and were justified in recovering it from Appellant; even if phone recovered from Appellant's waistband was subject to exclusion, remaining evidence would have sustained Appellant's conviction; when police encountered Appellant and pursued him, police observed Appellant drop object; item Appellant dropped and police recovered was cell phone; complainant promptly identified Appellant, as assailant, as well as cell phone recovered from

Appellant's person and cell phone Appellant had discarded; complainant also identified handgun Appellant had used during robbery, which police also recovered nearby; complainant positively identified Appellant as robber at scene; even though complainant could not identify Appellant as assailant at time of trial, complainant acknowledged he had previously identified Appellant in signed statement to police; complainant's prompt one-on-one identification of Appellant at scene as assailant was unequivocal and untainted by surrounding circumstances; complainant's inability to recognize and identify Appellant at trial did not require exclusion of complainant's prior identification of Appellant). Accordingly, we affirm.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/18/2017

- 7 -

CP-51-CR-0014962-2010 Comm. v. Evans, Eddie
Opinion

IN THE COURT OF COMMON PLEAS OF PHIL,
FIRST JUDICIAL DISTRICT OF PENN
CRIMINAL TRIAL DIVISIO.



7515840901

COMMONWEALTH OF PENNSYLVANIA     :     CP-51-CR-0014962-2010

VS.     :

EDDIE EVANS     :     1763 EDA 2016    **FILED**

OPINION     **OCT 2 1 2016**

SCHULMAN, S.I., J.     **Criminal Appeals Unit
First Judicial District of PA**

Appellant appeals this Court's Order dismissing his petition filed under the Post-Conviction Relief Act, 42 Pa. C.S.A. §§ 9541-9546 ("PCRA"). This Court submits the following Opinion pursuant to Pa. R.A.P. 1925 and recommends that Appellant's appeal be denied.

## PROCEDURAL BACKGROUND

On October 13, 2011, a jury convicted Appellant of robbery (18 Pa. C.S. § 3701(a)(1)(ii). On February 2, 2012, this Court sentenced Appellant to a mandatory minimum term of ten (10) to twenty (20) years' incarceration. Appellant filed a post-sentence motion on February 13, 2012, which this Court denied on February 14, 2012.

Appellant filed a direct appeal challenging his convictions and sentence, and on April 11, 2013, the Superior Court affirmed the jury's verdicts and this Court's sentence. Commonwealth v. Evans, 792 EDA 2012 (April 11, 2013) (Memorandum Opinion, P.J. Stevens). On May 10, 2013, Appellant filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which the Court denied on September 25, 2013. Commonwealth v. Evans, 265 EAL 2013, 621 Pa. 189 (Pa. September 25, 2013).

On December 22, 2014, Appellant filed a *pro se* PCRA petition alleging, *inter alia*, ineffective assistance of trial counsel. On or around July 17, 2015, James R. Lloyd, III, Esquire,

1

was appointed as Appellant's counsel. On November 27, 2015, counsel filed a *Turner/Finley* "no merit" letter and a petition to withdraw his representation. See Commonwealth v. Turner, 518 Pa. 491, 544 A.2d 927 (1988) and Commonwealth v. Finley, 379 Pa. Super. 390, 550 A.2d 213 (1988) *(en banc)*. On February 1, 2016, this Court issued Appellant a notice of dismissal pursuant to Pa. R. Crim. P. 907, advising that his PCRA petition would be dismissed within twenty (20) days on the basis of counsel's "no merit" letter. On March 2, 2016, Appellant filed a notice of appeal, and on March 21, 2016, this Court entered an order dismissing Appellant's PCRA petition.[1]

Michael P. Marryshow, Esquire, subsequently was appointed as new counsel for Appellant, and on October 4, 2016, Appellant filed a Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P. 1925(b).

## RELEVANT FACTUAL HISTORY

This Court summarized the pertinent facts of this case in its Rule 1925(a) opinion of July 30, 2012, which states:

> At trial, the Commonwealth first presented the testimony of Philadelphia Police Officer Michael Hanuscin. Officer Hanuscin testified that on September 15, 2010, at approximately 1:30 a.m., he and his partner, Officer Joe Caruso, were patrolling the Kensington neighborhood of Philadelphia when police radio broadcast a gun point robbery in the area of 2900 Ella Street; the broadcast described the perpetrator as a black male wearing a maroon hoodie, who allegedly took cell phones from a complainant at gunpoint. Officers Hanuscin and Caruso, who were three blocks away, proceeded northbound on B Street and then westbound on Indiana Avenue, before turning right onto

---

[1] Appellant filed his notice of appeal before this Court issued its final appealable order. However, in accord with Pa. R.A.P. 905(a)(5), since the notice of appeal was filed after this Court announced its "determination" of the case on February 1, 2016, the notice will be treated as having been filed on the date that the final appealable order was entered – *i.e.*, March 21, 2016. See Pa. R.A.P. 905(a)(5) ("A notice of appeal filed after the commencement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."); see also Commonwealth v. Maldonado, 2015 Pa. Super. Unpub. LEXIS 58, fn. 2 (Pa. Super. 2015); Commonwealth v. Thompson, 2015 Pa. Super. Unpub. LEXIS 42, fn. 3 (Pa. Super. 2015).

2

Ella Street. Toward the end of the block, they observed a black male matching the description -- later identified as Appellant -- walking northbound. The officers pursued Appellant, who then turned right onto Elkhart Street. The officers accelerated down Ella Street and turned right onto Elkhart, where they immediately spotted Appellant three or four houses up the block. As they drove up to Appellant, Officer Caruso exclaimed that Appellant had just dropped something. No other persons were present on Elkhart Street let alone in the surrounding area. The officers exited their vehicle, and with their handguns drawn, ordered Appellant to show his hands. Appellant raised his hands, placing them on the wall of a home in front of him. Officer Hanuscin frisked Appellant and retrieved two cell phones from his person, while Officer Caruso recovered a third cell phone lying on the ground a few feet from Appellant. Officer Caruso also found, within a few feet of Appellant, a loaded .40 caliber handgun tucked between a trash can and the front wall of the same home. (See N.T. 10/12/11, pp. 16-40).

Minutes later, the complainant, Michael Quinones, was transported to the scene. He confirmed that two of the three cell phones belonged to him, and positively identified Appellant as well as the handgun that Appellant used to rob him. Police secured the handgun under property receipt and submitted it to the firearms lab for further testing. (See N.T. 10/12/11, pp. 26-40).

Philadelphia Police Officer Francis Kober testified next for the Commonwealth. Officer Kober testified that on September 15, 2010 at approximately 1:35 a.m., he proceeded to Ella Street and Indiana Avenue in response to a report of gunpoint robbery. There, he encountered Mr. Quinones, who waived him down and described the incident. As Officer Kober was gathering the information, police radio advised that a male matching the description had just been stopped one or two blocks away. Officer Kober then transported Mr. Quinones to the location, where he positively identified Appellant as his assailant. Appellant was standing outside, and not in handcuffs, at the time of the identification. (See N.T. 10/12/11, pp. 91-105).

The Commonwealth next called the complainant, Michael Quinones, to the stand. Mr. Quinones testified that on September 15, 2010, he was walking home from a grocery store on B and Stella Streets, when a black male approached him and asked if he had any powder (cocaine). Mr. Quinones responded in the negative and continued walking. The black male then blocked his path, and pressing a black handgun against Mr. Quinones' chest, ordered him to "give him everything." Mr. Quinones handed the assailant two cell phones, nine dollars cash, an iPod, his keys, and Pennsylvania photo identification card. The male told Mr. Quinones to walk away, and he complied. The male then told him to run, and Mr. Quinones ran to his neighbor's house. There, Mr. Quinones excitedly described the incident to his neighbor, who called the police. (See N.T. 10/12/11, pp. 107-137).

Although Mr. Quinones was forthright in identifying Appellant at the time of the robbery, he was anything but at the time of trial. That is, whereas Mr. Quinones had positively identified Appellant, the handgun he used, and the cell phones at the scene -- in addition to providing detailed oral and written descriptions of the incident to police and

detectives in the immediate wake of the incident -- he claimed at trial that he "could not remember" if Appellant was his attacker. However, Mr. Quinones acknowledged at trial that, in his statement to detectives given just two hours after the robbery, he was "asked if [Appellant] was the male who pointed the gun at [him] and demanded [his] belongings," to which he responded, "[Y]es, that was the boy who robbed me." Notably, Mr. Quinones also testified that he never recovered his photo I.D. card -- which listed his home address -- nor his house keys, iPod or cash (See N.T. 10/12/11, pp. 124-129, 136-139).

Finally, the Commonwealth presented the testimony of Philadelphia Police Officer Joseph Caruso. Officer Caruso testified that on September 15, 2010, at approximately 1:30 a.m., he and Officer Hanuscin were on patrol when they received a gunpoint robbery call over police radio. Flash information advised that the perpetrator was a black male wearing a burgundy hoodie, and had robbed cell phones at gunpoint in the area of 2900 Ella Street. Officer Caruso and his partner were very close to that location, and proceeded to Ella Street, where they spotted Appellant walking northbound. With police trailing him, Appellant turned right onto Elkhart Street. They briefly lost sight of Appellant, for no more then ten seconds, until they made it onto Elkhart Street, where they immediately located him three or four houses away. Officer Caruso testified that, as soon as they turned the corner onto Elkhart Street, he saw Appellant drop something: "not a throwing motion, just dropping something to his side." Officer Caruso exited the cruiser and, with gun drawn given the nature of the radio call, ordered Appellant to show him his hands. After a frisk of Appellant produced a cell phone but no handgun, Officer Caruso began searching the immediate vicinity for same. Within five feet of Appellant, he recovered the second cell phone, and a loaded, black, .40 caliber handgun tucked behind a trash can. Officer Caruso testified that Mr. Quinones appeared at the scene moments later and positively identified Appellant, who was standing, and not in handcuffs. Officer Caruso then presented the cell phones and handgun -- shown separately -- to Mr. Quinones, who unequivocally identified the recovered items. (See N.T. 10/12/11, pp. 164-202).[2]

In his case-in-chief, Appellant solely offered his own testimony. He testified that, on September 15, 2010, he was visiting his friend, Latasha Leggett, who lived near E and Westmoreland Streets. At approximately 1:10 a.m., he departed her residence to go home.[3] He walked down E Street to the intersection of Clearfield Street, and proceeded westbound to B Street, where he encountered a black male who offered to sell him two cell phones for $20. Even though he already owned a cell phone, Appellant made a counter-offer of $10 for the two phones, and the male agreed. Appellant then stopped to purchase cigarettes at a "Chinese store" located on B and Stella Streets. Upon leaving the store, Appellant proceeded northbound on B Street, before turning westbound on Elkhart Street until he reached the Ella Street intersection -- at which time he realized that he did not have any matches to light his cigarette, so he decided to turn around and walk back down (eastbound on) Elkhart Street, where the police stopped him. (See N.T. 10/12/11, pp. 214-247).

4

Upon consideration of the above evidence, the jury found Appellant guilty of Robbery.[4] Following a pre-sentence investigation, this Court imposed sentence as previously set forth.

## DISCUSSION

### A. FINLEY LETTER/DISMISSAL OF PCRA PETITION

Appellant's PCRA counsel submitted a *Finley* letter concluding that Appellant's petition lacked merit. This Court dismissed Appellant's petition on the basis of counsel's *Finley* letter and granted counsel permission to withdraw his representation.

The *Finley* and *Turner* decisions "establish the procedure for withdrawal of court-appointed counsel in collateral attacks on criminal convictions." Commonwealth v. Pitts, 603 Pa. 1, fn. 1 (Pa. 2009). "Independent review of the record by competent counsel is required before withdrawal is permitted." Id. "Such independent review requires proof of: 1) A 'no merit' letter by PCRA counsel detailing the nature and extent of his review; 2) The 'no merit' letter by PCRA counsel listing each issue the petitioner wished to have reviewed; 3) The PCRA counsel's 'explanation', in the 'no-merit' letter, of why the petitioner's issues were meritless; 4) The PCRA court conducting its own independent review of the record; and 5) The PCRA court agreeing with counsel that the petition was meritless." Id.[5]

---

[2] The Commonwealth rested with stipulated ballistics evidence establishing that the recovered handgun was test fired and found to be operable. (See N.T. 10/12/11, p. 204).

[3] Appellant claimed he was trying to catch a bus at Front and Lehigh Streets, which was due to arrive shortly after 1:40 a.m. (See N.T. 10/12/11, pp. 223-224).

[4] The jury acquitted Appellant of Firearms Not to Be Carried Without a License.

See Commonwealth v. Evans, 792 EDA 2012 (July 30, 2012).

5

In his *pro se* petition, Appellant generally alleged that he is eligible for PCRA relief because his conviction and/or sentence resulted from: (1) "[a] violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place;" (2) "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place;" and/or (3) "[t]he improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court."

As noted in counsel's *Finley* letter, Appellant's "claims [were] not clearly developed in the *pro se* petition." According to counsel, however, Appellant communicated to him that Appellant sought to "allege[] that trial and/or appellate counsel was ineffective for: (1) failing to litigate a motion to suppress the out-of-court identification by complainant; and (2) failing to challenge the sufficiency of the evidence in post-sentence motions and on direct appeal; and (3) failing to properly object to the trial court permitting the jury to review a photograph of the cell phones and gun recovered by police in response to a request by the jury to see the same; and (4) failing to request that the trial court give the jury a cautionary instruction with respect to the identification evidence offered at trial." (See *Finley* Letter, pg. 6).

---

[5] Furthermore, appellate review of the denial of post-conviction relief "is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." Commonwealth v. Jones, 590 Pa. 202, 240-241 (2006). "While [appellate courts] will always defer to [the] PCRA court's factual determinations where supported by the record, the ultimate question of whether facts rise to the level of arguable merit is a legal determination." Id. Appellate courts "will not disturb the findings of the PCRA court if they are supported by the record, even where the record could support a contrary holding." Id. In other words, the findings of the PCRA court "will not be disturbed unless they have no support in the certified record." Commonwealth v. Sampson, 900 A.2d 887, 890 (Pa. Super. 2006).

Counsel advised in his *Finley* letter that he "reviewed all of the relevant documents related to this matter" and "concluded that ... the issues raised in the *pro se* petition[] are not meritorious under controlling authority." Counsel "further concluded that there are no other issues of arguable merit which could be raised in an amended petition." (See *Finley* Letter, pg. 1). Upon independently reviewing the record, this Court agrees with counsel that Appellant's PCRA claims were meritless.

1.    **Trial counsel's alleged failure to file a pre-trial motion to suppress Mr. Quinones's out-of-court identification**

"It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." Commonwealth v. Koehler, 36 A.3d 121, 132 (Pa. 2012). "[A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the 'ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Commonwealth v. Spotz, 624 Pa. 4, 33 (Pa. 2014). "Thus, to prove counsel ineffective, Appellant must demonstrate that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) Appellant was prejudiced by counsel's act or omission." Id. "If a petitioner fails to prove any of these prongs, his claim fails." Id. "[I]t is well-settled that a court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the ... test, the court may proceed to that element first." Koehler, 36 A.3d 121, 132.

Moreover, "[w]hen an ineffectiveness claim is premised on the fact that trial counsel never moved for suppression, the appellant must first establish that there was no reasonable basis

for counsel's inaction in the matter." Commonwealth v. Ervin, 691 A.2d 966, 973 (Pa. Super. 1997) (citing Commonwealth v. Arch, 654 A.2d 1141, 1143 (1995)). "Second, the appellant must show that a reasonable probability exists that the verdict would have been more favorable if suppression had been granted." Id.

This Court agrees with PCRA counsel that any motion to suppress Mr. Quinones's out-of-court identification would have been meritless, and that trial counsel cannot be deemed ineffective for failing to assert a meritless claim. "In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable." Commonwealth v. Bruce, 717 A.2d 1033, 1036-1037 (Pa. Super. 1998) (citations omitted here). "The question for the suppression court is whether the challenged identification has sufficient indicia of reliability to warrant admission, even though the confrontation procedure may have been suggestive." Id. "Suggestiveness in the identification process is a factor to be considered in determining the admissibility of such evidence, but suggestiveness alone does not warrant exclusion." Id. "A pretrial identification will not be suppressed as violative of due process unless the facts demonstrate that the identification procedure was so infected by suggestiveness as to give rise to a substantial likelihood of irreparable misidentification." Id.

Furthermore, "[t]he purposes of a 'one on one' identification is to enhance reliability by reducing the time elapsed after the commission of the crime." Commonwealth v. Meachum, 711 A.2d 1029, 1034 (Pa. Super. 1998). "In determining whether a particular identification was reliable, the suppression court should consider the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [his] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." Bruce, 717 A.2d 1033, 1037. "The corrupting effect

8

of the suggestive identification, if any, must be weighed against these factors." Meachum, 711 A.2d 1029, 1034. "Absent some special element of unfairness, a prompt 'one on one' identification is not so suggestive as to give rise to an irreparable likelihood of misidentification." Id.

At trial, Mr. Quinones testified that after the robbery he ran inside the home of his neighbor, who called the police. Less than thirty (30) minutes later, Officer Kober arrived in his patrol car and transported Mr. Quinones down the block to where Appellant had just been stopped by Officers Hanuscin and Caruso. (N.T., 10/12/11, pgs. 104, 116-119, 135). Officer Kober shined a spotlight on Appellant, who was brought over to the patrol car for identification.[6] While seated in the patrol car's rear seat, Mr. Quinones identified Appellant as the individual who robbed him at gunpoint. (Id. at pgs. 94-96, 104-105, 174).[7] Although Mr. Quinones testified at trial that he could not *then* identify Appellant, he nevertheless acknowledged that he previously identified Appellant in his signed statement to detectives given just two hours after the robbery. (Id. at pgs. 124-129, 136-139).

This Court finds no basis to conclude that Mr. Quinones's prompt, one-on-one identification was equivocal or impermissibly tainted by any surrounding circumstance (*e.g.*, lack of lighting or view). The testimony established that Mr. Quinones positively identified

---

[6] There was conflicting testimony regarding whether Appellant was handcuffed at the time he was identified by Mr. Quinones. Officers Kober and Caruso testified that Appellant was not handcuffed at the time, but Officer Hanuscin testified that Appellant was handcuffed. (Id., pgs. 71-72, 105, 181-183).

[7] Appellant claims in his Rule 1925(b) Statement that Mr. Quinones "identified Appellant from approximately 40 feet away." Appellant does not cite any testimony to support this specific distance – *i.e.*, "40 feet away." Moreover, Officers Kober and Caruso testified that when Mr. Quinones was transported to where Appellant was stopped, Appellant was taken over to the patrol car for identification. (Id., pgs. 95-96, 174).

9

Appellant only one-half hour after the crime, merely two blocks away from the crime scene, and while officers illuminated Appellant with a spotlight. There was no "special element of unfairness" that blemished Mr. Quinones's "prompt 'one on one' identification [as] so suggestive as to give rise to an irreparable likelihood of misidentification." Meachum, 711 A.2d 1029, 1034. Moreover, Mr. Quinones's testimony at trial – *i.e.*, that he could not recognize Appellant – would not require the exclusion of evidence that Mr. Quinones *did* previously identify Appellant to the responding officers. Pursuant to Pa. R.E. 803.1(1), "inconsistent statements made by a witness prior to the proceeding at which he is then testifying are admissible as substantive evidence of the matters they assert so long as those statements, when given, were adopted by the witness in a signed writing or were verbatim contemporaneous recordings of oral statements." Commonwealth v. Stays, 70 A.3d 1256, 1262 (Pa. Super. 2013). As noted, although Mr. Quinones claimed at trial that he could not identify Appellant, he previously acknowledged in writing that he identified Appellant to the officers responding to the robbery.

Since Appellant cannot establish that Mr. Quinones's out-of-court identification was unreliable or marred by "some special element of unfairness," his counsel cannot be deemed ineffective for failing to litigate a motion to suppress the same.

### 2. Trial counsel's alleged failure to challenge the sufficiency of the evidence

According to PCRA counsel, Appellant "claims that trial counsel and direct appellate counsel were ineffective because they failed to challenge the sufficiency of the evidence in post-sentence motions and on direct appeal." This claim is meritless, as appellate counsel *did* challenge the sufficiency of the evidence on direct appeal and both this Court and the Superior Court addressed the issue in their prior opinions. On direct appeal, Appellant raised the following challenge:

10

"Is Appellant entitled to have his conviction vacated where the Commonwealth failed to sustain its burden of proving beyond a reasonable doubt that Appellant was the perpetrator, where the complainant, Michael Quinones, never identified Appellant at either the preliminary hearing or at trial and where the sole evidence relied on by the Commonwealth and submitted to the jury for the identification of the actual perpetrator of the robbery was a suggestive show-up?"

See Commonwealth v. Evans, 792 EDA 2012, pg. 5 (April 11, 2013).

Addressing Appellant's claim, the Superior Court ruled that "[a]fter reviewing the evidence in the light most favorable to the Commonwealth, we agree with the thorough analysis of the law and facts as developed by the trial court in its July 30, 2012 opinion recommending that Appellant's judgment of sentence be affirmed." Id. at pg. 6. Accordingly, Appellant's petition in this regard was entirely baseless.

**3.      Trial counsel's alleged failure to object to the admission of a photograph showing the seized cell phones and firearm**

According to counsel, Appellant "seeks post-conviction relief because he claims that trial counsel was ineffective for failing to properly object to the trial Court permitting the jury to review a photograph of the cell phones and gun recovered by police in response to a request by the jury to see the same." (*Finley* Letter, pg. 13). Counsel summarizes Appellant's argument as follows:

> The crux of petitioner's argument is that the photograph at issue is a single photograph of the stolen cell phones and the handgun recovered by police. Petitioner notes that this photograph was 'staged'. That is, the police placed all three items in a spot at the police district where they could all be captured in a single photograph. Petitioner posits that this caused an unfair association between the proceeds of the robbery (*i.e.*, the cell phones) which he admitted he possessed, and the gun used to commit the robbery which was recovered a short distance away and which petitioner denies having any knowledge of."

(*Finley* Letter, pg. 13). Counsel notes that this Court and the Superior Court found that Appellant failed to preserve this issue on direct appeal with a timely, specific objection. See Evans, 792 EDA 2012, pg. 7.

11

"Admission of evidence is within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion." Commonwealth v. Montalvo, 986 A.2d 84, 94 (Pa. 2009) (citations omitted here). "Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record."

Moreover, Appellant "must demonstrate that there is a reasonable probability that, but for counsel's error or omission" in failing to object to the photograph, "the result of the proceeding would have been different." Koehler, 36 A.3d 121, 132. "A defendant is required to show actual prejudice; that is, that counsel's ineffectiveness was of such magnitude that it could have reasonably had an adverse effect on the outcome of the proceedings." Commonwealth v. Sampson, 900 A.2d 887, 890 (Pa. Super. 2006). "[T]he test for prejudice in the ineffectiveness context is more exacting than the test for harmless error, and the burden of proof is on the defendant, not the Commonwealth." Spotz, 624 Pa. 4, 38-39. "As a general and practical matter, it is more difficult for a defendant to prevail on a claim litigated through the lens of counsel ineffectiveness, rather than as a preserved claim of trial court error." Id. "A defendant raising a claim of ineffective assistance of counsel is required to show actual prejudice; that is, that counsel's ineffectiveness was of such a magnitude that it could have reasonably had an adverse effect on the outcome of the proceedings." Id. (citations omitted here). "This standard is different from the harmless error analysis that is typically applied when determining whether the trial court erred in taking or failing to take certain action." Id. "The harmless error standard ... states that whenever there is a *reasonable* possibility that an error might have contributed to the conviction, the error is not harmless." Id. (emphasis in original). "This standard, which places

12

the burden on the Commonwealth to show that the error did not contribute to the verdict beyond a reasonable doubt, is a lesser standard than the ... prejudice standard, which requires the defendant to show that counsel's conduct had an actual adverse effect on the outcome of the proceedings." Id. "This distinction appropriately arises from the difference between a direct attack on error occurring at trial and a collateral attack on the stewardship of counsel." Id. "In a collateral attack, [courts] first presume that counsel is effective, and that not every error by counsel can or will result in a constitutional violation of a defendant's Sixth Amendment right to counsel." Id.

Appellant claims that the photograph induced the jury to draw an "unfair association" between the stolen cell phones and the firearm allegedly used in the robbery. Appellant's claim is unpersuasive. At trial, there essentially was no dispute that Appellant possessed the two cell phones that were stolen from Mr. Quinones. The issue was whether Appellant robbed Mr. Quinones of the phones or simply purchased the contraband just moments after the robbery, from an unknown male whom Appellant happened to encounter near the robbery vicinity around 1:30 a.m. This Court does not conceive how a photograph that showed both the phones which Appellant admittedly possessed, and the gun which was recovered a few feet from where Appellant was stopped and which Mr. Quinones identified as the weapon used during the robbery, could have steered the jury toward *any* "*unfair* association" in this case. (emphasis supplied). In fact, the jury acquitted Appellant on the charge of unlawfully possessing the firearm without a license, thus indicating that the jury *did not* associate the firearm with the phones that Appellant admittedly possessed. Accordingly, even if trial counsel preserved this issue for direct appellate review, it would have afforded Appellant no relief, and Appellant

13

therefore suffered no "actual prejudice" from counsel's alleged failure to object to the photograph.

**4.    Trial counsel's alleged failure "to request that the trial court give the jury a cautionary instruction with respect to the identification evidence offered at trial."**

According to counsel, Appellant "claims that trial counsel was ineffective because he failed to request that the trial court give the jury a cautionary instruction with respect to the identification evidence offered at trial." (See *Finley* Letter, pg. 13). Appellant's claim is baseless. Trial counsel *did* request a cautionary instruction concerning the "identification evidence," and this Court provided the instruction. (N.T., 10/12/16, pgs. 253-254; 10/13/16, pgs. 22-23). This Court's cautionary instruction mirrored Pennsylvania's Standard Jury Instruction 4.07B, which originated from the Pennsylvania Supreme Court's decision in Commonwealth v. Kloiber, 106 A.2d 820 (Pa. 1954).

**B. APPELLANT'S 1925(B) STATEMENT**

Appellant's Rule 1925(b) Statement avers:

The above named defendant, by his attorney, Michael P. Marryshow, Esquire, respectfully states that the matters complained of on appeal are as follows:

1.    Trial counsel was ineffective in failing to file a motion to suppress the physical evidence where the police officer following a stop and frisk of Appellant retrieved a cell phone from Appellant's pocket. The officer testified that it felt like a cell phone. A stop and frisk should be limited to a search for weapons, even if the officer believed that he felt a cell phone he had no way of knowing that the cell phone was contraband. Trial counsel had no reasonable basis in filing[*sic*] to file a motion to suppress the physical evidence. Appellant was prejudice[*sic*] as a motion to suppress would probably have been granted and there would have been no physical evidence linking Appellant to the robbery. But for trial counsel failing to file and litigate a motion to suppress the outcome probably would have been different. PCRA counsel was ineffective in failing to raise this claim in the PCRA petition as the claim had arguable merit and for the same analysis as discussed above.

14

2. Trial counsel was ineffective in failing to file a motion to suppress the out of court identification as it was dark out. Complainant identified Appellant from approximately 40 feet away. Complainant was slumped in the police car during the identification as he did not want Appellant to see him. Complainant testified that he was focused at the weapon pointed at him during the robbery and he did not focus on his assailant's face. Complainant failed to identify Appellant at the preliminary hearing and at trial. Trial counsel had no reasonable basis in failing to file and litigate a motion to suppress the out of court identification as there was no other identification that would have been left if the out of court identification had been suppressed. Appellant was prejudiced as the motion to suppress probably would have been granted and there was no identification left to convict Appellant and/or the issue would have been preserved for appeal. But for counsel failing to file and litigate the motion to suppress the outcome probably would have been different and/or the issue would have been preserved for appeal. PCRA counsel was ineffective in failing to raise the issue as it had arguable merit and Appellant was prejudiced by trial counsel's inactions for the same analysis discussed above.

1. **Trial counsel's alleged failure to litigate a motion to suppress one of the two stolen cell phones.**

Officers Hanuscin and Caruso received a radio call around 1:30 a.m. concerning an armed robbery that occurred a few blocks from their location, which was a "high crime" area with "lots" of guns and drug activity. The call described the suspect as a black male wearing a burgundy hoodie and "stated that two cell phones were taken during the robbery." The officers immediately responded to the robbery vicinity and observed Appellant, who was a black male wearing a burgundy (or red) hoodie. Nobody else was in the area around 1:30 a.m., let alone anyone else matching the suspect's description. The officers therefore pursued Appellant down a residential block and observed him "drop[] something." (N.T., 10/12/11, pgs. 16-24, 164-180, 199)

The officers pulled beside Appellant and exited their patrol vehicle, with their guns drawn because the flash information reported an armed suspect. Believing that Appellant may be armed, the officers instructed him to place his hands against a nearby wall "so he didn't reach for a gun or anything like that." Officer Hanuscin then "did a frisk for weapons and any

15

contraband that could probably hurt [him] and [his] partner," but he "didn't find a weapon at this time." However, Officer Hanuscin "felt a cell phone coming off of [Appellant's] waistband in his pocket and ... remember[ed] that the radio call stated that two cell phones were taken during the robbery." After Officer Hanuscin frisked Appellant and recovered two cell phones but no firearm, Officer Caruso "turned back to see what [Appellant] dropped and ... could see that it was a cell phone" located "maybe five feet" behind Appellant. (Id., pgs. 22-24, 171-172).

Officer Kober arrived only minutes later with Mr. Quinones, who identified Appellant as his robber, and then identified the cell phone that Appellant dropped and the cell phone recovered from Appellant's person. (Id., pgs. 183, 202). Mr. Quinones subsequently advised Officer Caruso that Appellant used a "big black gun" during the robbery and the officers searched the vicinity for the firearm. About ten (10) seconds later, Officer Hanuscin discovered a loaded .40 caliber handgun "between [a] trash can and the wall of the house directly to the right of where [the officers] originally stopped [Appellant]." (Id., pg. 20). Officer Caruso retrieved and disarmed the gun before showing it to Mr. Quinones, who identified the weapon as that which Appellant used during the robbery. (Id., pgs. 175-179).

Appellant claims that a motion to suppress the stolen cell phone recovered from his person would have been meritorious because Officer Hanuscin lacked reasonable suspicion or probable cause to frisk Appellant for the phone.

"Where an officer reasonably suspects that criminal activity is afoot, the officer may temporarily freeze the status quo by preventing the suspect from leaving the scene in order to ascertain his identity and gather additional information." In the Interest of D.M., 556 Pa. 160, 164 (Pa. 1999). "The officer may also conduct a quick frisk for weapons if he reasonably fears that the person with whom he is dealing may be armed and dangerous." Id. A court's inquiry

16

into whether police officers possessed reasonable suspicion to conduct an investigatory detention "is a dual one -- whether the officers' action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Commonwealth v. Zhahir, 561 Pa. 545, 552 (Pa. 2000).

"The fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate." Zhahir, 561 Pa. 545, 552. "This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability." Id. "Because street encounters are so incredibly rich in diversity, each case is to be scrutinized in light of its own facts." Commonwealth v. Whelton, 465 A.2d 1043, 1049 (Pa. Super. 1983).

Moreover, "[r]eview of an officer's decision to frisk for weapons requires balancing two legitimate interests: that of the citizen to be free from unreasonable searches and seizures; and that of the officer to be secure in his personal safety and to prevent harm to others." Commonwealth v. Zhahir, 561 Pa. 545, 554-555 (Pa. 2000) (citations omitted here). "To conduct a limited search for concealed weapons, an officer must possess a justified belief that the individual, whose suspicious behavior he is investigating at close range, is armed and presently dangerous to the officer or to others." Id. "In assessing the reasonableness of the officer's decision to frisk, we do not consider his unparticularized suspicion or hunch, but rather the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Id.

Here, Officers Hanuscin and Caruso clearly possessed a reasonable suspicion to stop and frisk Appellant. Around 1:30 a.m., the officers received a radio call that briefly described the gunpoint robbery. Minutes later, the officers observed Appellant in the robbery vicinity, which was a "high crime" area with "lots" of guns. Appellant was the only person that the officers observed in the vicinity, and he matched the description of the *armed* suspect provided over police radio. Under these circumstances, the officers plainly were justified in stopping and frisking an individual – *i.e.*, Appellant – who matched the description of the suspect in an armed robbery that occurred only moments earlier in the same area.

The officers also were justified in recovering the stolen cell phone from Appellant. "[T]he purpose of a frisk under Terry is not to discover evidence, but to allow the officer to pursue his investigation without fear of violence." Zhahir, 561 Pa. 54, 555-556 (citations omitted here). "In keeping with such purpose, the frisk must be limited to that necessary for the discovery of weapons." Id. However, "an officer may also properly seize non-threatening contraband detected through the sense of touch during a protective frisk for weapons." Id. The "plain feel doctrine ... applies to validate a seizure of contraband other than a weapon where an officer is lawfully in a position to detect it; its incriminating nature is immediately apparent from its tactile impression; and the officer has a lawful right of access to the object." Id. The "immediately apparent" inquiry "takes into account the totality of the circumstances surrounding the frisk, including, inter alia, the nature of the object, its location, the conduct of the suspect, the officer's experience, and the reason for the stop." Id. "Moreover, an officer's subjective belief that an item is contraband is not sufficient unless it is objectively reasonable in light of the facts and circumstances that attended the frisk." Id.

18

The radio call reported that the perpetrator took two cell phones from Mr. Quinones. While frisking Appellant for weapons, Officer Hanuscin "felt a cell phone coming off of [Appellant's] waistband in his pocket and ... remember[ed] that the radio call stated that two cell phones were taken during the robbery." (N.T., 10/12/11, pgs. 23-24, 39, 42, 166). Having knowledge that an armed individual matching Appellant's description had just stolen two cell phones in the same vicinity only moments ago, it was "objectively reasonable" for Officer Hanuscin to conclude that the cell phone in Appellant's waistband was contraband.

Moreover, even if the stolen cell phone recovered from Appellant's waistband was subject to the exclusionary rule, the remaining evidence would have sustained Appellant's robbery conviction. Officer Caruso saw Appellant drop an item about five feet from where the officers eventually stopped him. While Officer Hanuscin frisked Appellant, Officer Caruso "turned back to see what [Appellant] dropped and ... could see that it was a cell phone." (N.T., 10/12/11, pgs. 171-172). *After* identifying Appellant as the perpetrator, Mr. Quinones identified not only the cell phone recovered from Appellant's waistband *but also the cell phone that Appellant discarded on the sidewalk before the Terry stop.* Mr. Quinones as well identified the gun that Appellant used in the robbery, which Officer Caruso had recovered only a few feet from where Appellant was stopped. (Id. at pgs. 201-202). Accordingly, even if the stolen cell phone recovered from Appellant's waistband was excluded pursuant to a suppression motion, the remaining, properly admitted evidence, easily would have sufficed to sustain Appellant's conviction.

19

Since Appellant cannot "show that a reasonable probability exists that the verdict would have been more favorable if suppression had been granted," his claim of ineffective assistance of counsel fails. Quoting Ervin, 691 A.2d 966, 973.[8]

## CONCLUSION

For the reasons set forth in the foregoing Opinion, this Court's Order dismissing Appellant's PCRA petition should be affirmed.

BY THE COURT:

DATE: 10/21/16

_____
SUSAN I. SCHULMAN, J.

---

[8] Appellant's second claim in his Rule 1925(b) Statement – *i.e.*, that his trial counsel failed to file a motion to suppress evidence of Mr. Quinones's identification – is addressed above in reference to PCRA counsel's *Finley* letter.

## PROOF OF SERVICE

I, Giles Letlough, Judicial Aide to Honorable Susan I. Schulman, hereby certify that I

served, on October 21, 2016, by first-class mail, postage prepaid, a true and correct copy of

the foregoing Opinion on the following

Michael P. Marryshow, Esq.
P.O. Box 22658
Philadelphia, PA 19110

Hugh Burns, ADA
District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107

Giles Letlough